HOLSTEIN ET IV, LTD., LESTER E. HAMMER, A PARTNER OTHER THAN THE TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Holstein Et IV, Ltd.
Docket No. 9782-90
United States Tax Court
T.C. Memo 1992-716; 1992 Tax Ct. Memo LEXIS 759; 64 T.C.M. (CCH) 1539; December 17, 1992, Filed For Petitioner: Donald A. Statland. For Respondent: Linda C. Grobe and Marjory A. Gilbert. PARKER
PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Petitioner, a partner other than the tax matters partner, filed a petition for readjustment of partnership items under section 6226(b). Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the pertinent years before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure. On July 1, 1992, the case was heard on respondent's second motion to dismiss for lack of jurisdiction, filed May 1, 1992, and tried on the merits at a special trial session in Chicago, Illinois. [1] Since petitioner has conceded that his petition was filed in an untimely manner, the issue for decision is whether the notice of final partnership administrative adjustment issued in this case is invalid. *760 FINDINGS OF FACT Petitioner Lester E. Hammer did not appear at the hearing and trial of this case, but was represented by counsel. No formal discovery was conducted in this case, and no stipulations of fact were filed. See supra note 1. Some oral stipulations and concessions were made on the record in the transcript of the proceedings and are so found. This case involves a so-called TEFRA partnership subject to sections 6221-6233. [2]
On November 14, 1989, pursuant to section 6223(a)(2), respondent mailed duplicate original notices of Final Partnership Administrative Adjustment (FPAAs) to the generic (unnamed) Tax Matters Partner of Holstein ET IV, Ltd. for the taxable year ended December 31, 1985. The *761 duplicate original FPAAs were mailed to the generic (unnamed) Tax Matters Partner of Holstein ET IV, Ltd., at three different addresses, as follows: c/o Mid America Breeding Co., Inc., 4711 West Golf Road, Suite 805, Skokie, Illinois 60076 4711 West Golf Road, Skokie, Illinois 60076 c/o Mid America Breeding Co., Inc., 2400 East Oakton Street, Arlington Heights, Illinois 60005 The address shown on the Form 1065, U.S. Partnership Return of Income, for the taxable year 1985 for Holstein ET IV, Ltd., was: c/o Mid America Breeding Co., Inc., 2400 E. Oakton, Arlington Heights, Ill. 60005 That return was dated February 17, 1986, and was signed by H. Barry Goodman on the line labeled "general partner". H. Barry Goodman (hereinafter Goodman) was the owner of 50 percent of the stock of Mid America Breeding Co., Inc., and was the president of that corporation at all times pertinent to this case. The other 50 percent of the stock of Mid America Breeding Co., Inc. was owned by one Daniel Elichek (hereinafter Elichek). Mid America Breeding Co., Inc. was the sole general partner of the Holstein ET IV, Ltd. partnership, having a small interest in the partnership as the general partner. *762 Mid America Breeding Co., Inc., was also a limited partner of Holstein ET IV, Ltd. partnership, having invested in two units of $ 7,250 each. Goodman, in his individual capacity, did not have any interest in Holstein ET IV, Ltd., as either a general partner or a limited partner. In addition to Mid America Breeding Co., Inc.'s two units as a limited partner, there were some 24 other limited partners, including petitioner Lester E. Hammer. On December 18, 1989, pursuant to section 6223(a)(2) and (d)(2), respondent mailed copies of the FPAA for Holstein ET IV, Ltd. for the taxable year ended December 31, 1985, to the notice partners, including petitioner Lester E. Hammer, a partner other than the tax matters partner (hereinafter petitioner). [3] There is no dispute that petitioner actually received the FPAA. *763 No one purporting to be the Tax Matters Partner of Holstein ET IV, Ltd. filed a petition for readjustment of partnership items within the 90-day period commencing November 14, 1989, the date the FPAA was mailed to the generic (unnamed) Tax Matters Partner. That 90-day period prescribed by section 6226(a) expired on February 12, 1990. On May 17, 1990, petitioner, a partner other than the tax matters partner, filed a petition for readjustment of partnership items based upon the FPAA mailed to him on December 18, 1989. That petition was not filed within the 60-day period prescribed by section 6226(b). The 60-day period following the 90-day period (i.e. 60 days after February 12, 1990) expired on April 13, 1990. Petitioner has conceded that his readjustment petition was not filed within the 60-day period. [4]
*764 OPINION Since the petition was not timely filed, respondent asks the Court to dismiss the case for lack of jurisdiction on that ground. Petitioner now agrees that the Court lacks jurisdiction, but argues the case should be dismissed on a different ground. Petitioner argues instead that the FPAA itself is invalid. First, petitioner says that respondent knew the name of the Tax Matters Partner and that, because respondent failed to mail the FPAA to that individual and instead sent the FPAA to a generic (unnamed) Tax Matters Partner, the FPAA is invalid. Secondly, petitioner says that the FPAA is invalid because the statute requires that it be sent to all notice partners, and the record does not establish that copies were sent to all notice partners. Both of petitioner's arguments are based on sheer speculation, and if the arguments otherwise had merit, they would still fail for lack of proof. Each partnership must designate a general partner as the tax matters partner to serve as the primary representative of the partnership in dealing with the Internal Revenue Service. A partner may be designated as the tax matters partner of the partnership only if he was a general partner. *765 Sec. 6231(a)(7); Montana Sapphire Associates Ltd. v. Commissioner, 95 T.C. 477, 480-482 (1990). Section 6231(a)(7) defines the tax matters partner as follows: (7) Tax Matters Partner. -- The tax matters partner of any partnership is -- (A) the general partner designated as the tax matters partner as provided in regulations, or (B) if there is no general partner who has been so designated, the general partner having the largest profits interest in the partnership at the close of the taxable year involved (or, where there is more than 1 such partner, the 1 of such partners whose name would appear first in an alphabetical listing).
If there is no general partner designated under subparagraph (A) and the Secretary determines that it is impracticable to apply subparagraph (B), the partner selected by the Secretary shall be treated as the tax matters partner.
The record establishes that there was only one general partner, a corporation, Mid America Breeding Co., Inc., and that corporation was equally owned by two men, H. Barry Goodman and Daniel Elichek. Goodman signed the Form 1065 partnership return on the line labeled "general partner". *766 The return nowhere identifies Mid America Breeding Co., Inc. as the sole general partner. However, there is a Schedule K-1 that identifies the corporation as a general partner. Mid America Breeding Co., Inc. also appeared in the partnership's address, e.g., c/o Mid America Breeding Co., Inc. Similarly, on the Form 872-P, Goodman signed on the line labeled "Tax Matters Partner". The record establishes that Goodman individually was not a partner, either general or limited. The record establishes that he was not acting in his individual capacity but as the president of Mid America Breeding Co., Inc., the sole general partner and the Tax Matters Partner. [5] *767 Finally, the record establishes that Mid America Breeding Co., Inc., was not in bankruptcy during the relevant times pertinent to this case. [6]
A copy of the FPAA was mailed to petitioner on December 18, 1989, and he actually received that notice soon thereafter. [7] The Tax Matters Partner of Holstein ET IV, Ltd., had until February 12, 1990, within which to file a readjustment petition. When no such petition was filed, petitioner as a notice partner had a further period of 60 days, to and including April 13, 1990, within which to file a readjustment petition as a partner other than the tax matters partner. *768 Respondent's supposed derelictions in issuing the FPAA to a generic (unnamed) Tax Matters Partner have nothing to do with petitioner's failure to timely file his petition in this Court. In fact, the record in this case is strangely silent and wholly devoid of any explanation as to why petitioner failed to file his petition in a timely manner. In trying instead to invalidate the FPAA, petitioner's argument, at bottom, must be that a generic FPAA is automatically invalid. We have held otherwise. Triangle Investors Ltd. Partnership v. Commissioner, 95 T.C. 610 (1990); Montana Sapphire Associates v. Commissioner, 95 T.C. at 482; Seneca, Ltd. v. Commissioner, 92 T.C. 363 (1989), affd. without published opinion 899 F.2d 1225 (9th Cir. 1990); Chomp Associates v. Commissioner, 91 T.C. 1069, 1072-1075 (1988); Clovis I v. Commissioner, 88 T.C. 980, 982 (1987). Specifically, we have held that respondent, by sending a generically addressed notice, has provided the adequate or "minimal" notice contemplated under *769 section 6223(a). Chomp Associates v. Commissioner, supra at 1073-1074; see also Clovis I v. Commissioner, supra at 981-982. Furthermore, we have held that, even if respondent is aware that a specific person or entity is acting as the tax matters partner, the failure to specifically identify that person or entity as the tax matters partner on the FPAA is not fatal to its validity. Triangle Investors Ltd. Partnership v. Commissioner, supra at 614; accord Chomp Associates v. Commissioner, supra; Seneca, Ltd. v. Commissioner, supra.
As to the second prong of his attempt to invalidate the FPAA, petitioner speculates that some of the notice partners may not have received a copy of the FPAA. Again, this is baseless speculation on petitioner's part. There is no evidence that any partner entitled to receive notice failed to receive the FPAA. Moreover, since petitioner admittedly received his copy of the FPAA and received it within ample time to file a readjustment petition in this Court, we do not see why the FPAA *770 would be invalid as to him in any event. Certainly the law is otherwise for ordinary statutory notices of deficiency. For instance, when duplicate notices of deficiency must be sent to a husband and wife who filed a joint tax return but are now living apart at separate addresses, the fact that the deficiency notice may be invalid as to the wife who fails to receive it, because it was not mailed to her "last known address", does not invalidate the notice actually received by the husband. See Abeles v. Commissioner, 91 T.C. 1019 (1988). Petitioner has not suggested, and we cannot think of, any reason why the result should be different with an FPAA. The statutory duty to send the FPAA to all partners is not as sweeping or absolute as petitioner seems to argue. Section 6223(a) does require that the Secretary give notice to each partner, whose name and address is furnished to the Secretary, of the beginning of an administrative proceeding and of the FPAA. However, every partner is not to be entitled automatically to notice from the Secretary unless he has met certain requirements. The flush language of section 6223(a) states that: A partner shall *771 not be entitled to any notice under this subsection unless the Secretary has received (at least 30 days before it is mailed to the tax matters partner) sufficient information to enable the Secretary to determine that such partner is entitled to such notice and to provide such notice to such partner.
More importantly, the TEFRA partnership provisions themselves expressly provide for the situation where the Secretary has failed to send to a partner the required FPAA. Section 6223(e), in pertinent part, reads as follows: (e) Effect of Secretary's Failure to Provide Notice. -- (1) Application of Subsection. -- (A) In General. -- This subsection applies where the Secretary has failed to mail any notice specified in subsection (a) to a partner entitled to such notice within the period specified in subsection (d). * * *
(2) Proceedings Finished. -- In any case to which this subsection applies, if at the time the Secretary mails the partner notice of the proceeding -- (A) the period within which a petition for review of a final partnership administrative adjustment under section 6226 may be filed has expired and no such petition has been filed, or (B) the decision of *772 a court in an action begun by such a petition has become final, the partner may elect to have such adjustment, such decision, or a settlement agreement described in paragraph (2) of section 6224(c) with respect to the partnership taxable year to which the adjustment relates apply to such partner. If the partner does not make an election under the preceding sentence, the partnership items of the partner for the partnership taxable year to which the proceeding relates shall be treated as nonpartnership items. (3) Proceedings Still Going On. -- In any case to which this subsection applies, if paragraph (2) does not apply, the partner shall be a party to the proceeding unless such partner elects -- (A) to have a settlement agreement described in paragraph (2) of section 6224(c) with respect to the partnership taxable year to which the proceeding relates apply to the partner, or (B) to have the partnership items of the partner for the partnership taxable year to which the proceeding relates treated as nonpartnership items.
Any notice partner or 5-percent group to whom the Secretary has failed to mail an FPAA can either elect to be bound by the ongoing or completed partnership *773 proceeding (judicial decision, settlement, etc.) or can elect to have his partnership items treated as nonpartnership items. Thus, a statutory remedy has been provided for a partner entitled to notice who does not receive such notice. The failure to mail a notice to such a partner cannot, by any stretch of the statutory language or one's imagination, be deemed to invalidate the FPAA that another partner, such as petitioner, actually received. Accordingly, we reject petitioner's arguments that the FPAA is invalid. We conclude that, since the petition was not timely filed, the Court lacks jurisdiction, and respondent's motion to dismiss for lack of jurisdiction will be granted. An appropriate order will be entered.
Footnotes
1. The tortuous procedural history of this case is detailed in the Court's orders of February 19, 1992, April 6, 1992, May 4, 1992, and May 25, 1992. Petitioner's counsel was not prepared to try the case on the merits at the July 1, 1992 special trial session and at the conclusion of the proceedings professed not to understand that this was a trial on the merits as well as an evidentiary hearing on respondent's second motion to dismiss. From the record as a whole, it is clear that petitioner, who absented himself from the trial, simply chose not to spend the money required to permit his counsel to prepare his case either for the evidentiary hearing or for trial on the merits.↩
2. Sec. 402(a) of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA) added subchapter C of chapter 63 of subtitle F (secs. 6221-6233) to the Internal Revenue Code to provide that the tax treatment of partnership items is to be determined at the partnership level. Pub. L. 97-248, 96 Stat. 324, 648.↩
3. Petitioner's counsel complained at the trial that he did not know whether or not the FPAA was sent to all↩ of the notice partners. Since the FPAA admittedly was mailed to petitioner and was actually received by him, the Court does not see what standing petitioner might have to complain about whether or not some other notice partner may not have received the FPAA. Petitioner did not engage in any formal discovery in this case, although the Court, in its particularized pre-trial order for this case, set a schedule for accomplishment of the same. In any event, other than speculation by petitioner's counsel, there is simply no evidence in the record that suggests that any other notice partner failed to receive the FPAA.
4. Since timely filing of a petition is jurisdictional in the Tax Court, that would appear to end the matter. In his various motion papers, petitioner has also suggested that the statute of limitations had run on assessment of any tax. However, the statute of limitations is an affirmative defense that must be raised in the pleadings or it is waived. Columbia Building, Ltd. v. Commissioner, 98 T.C. 607, 611 (1992); Saso v. Commissioner, 93 T.C. 730, 734-735 (1989); Genesis Oil & Gas, Ltd. v. Commissioner, 93 T.C. 562↩ (1989). Possibly out of an excess of caution, respondent adduced evidence establishing that Goodman signed a Form 872-P, Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership, extending respondent's time to December 31, 1989. Goodman signed on the line labeled "Tax Matters Partner", but did not affix any title after his name. The FPAA was issued to the generic (unnamed) Tax Matters Partner on November 14, 1989, and copies were mailed to the limited partners on December 18, 1989, well within the extended limitations period. Petitioner's counsel challenged the authority of Goodman to execute that Form 872-P on behalf of Holstein ET IV, Ltd. However, the record establishes that Mid America Breeding Co., Inc. was the sole general partner, and that the corporation was owned by Goodman and Elichek, each being a 50-percent stockholder. The record further establishes that once the tax audit began, Elichek authorized Goodman to handle all of the tax matters for the general partner, i.e., Mid America Breeding Co., Inc. Goodman, in his individual capacity, did not have any interest in the partnership, either as a general or limited partner. It is clear that when Goodman signed the Form 1065 partnership return and when he signed the Form 872-P, he was signing as the president of Mid America Breeding Co., Inc., the sole general partner and the Tax Matters Partner of Holstein ET IV, Ltd. Obviously, it would have eliminated all doubt had he put after his signature a title, such as "president, Mid America Breeding Co., Inc., the sole general partner and the Tax Matters Partner of Holstein ET IV, Ltd.". The Court, however, is satisfied that Goodman was not acting in his individual capacity but signed the Form 1065 partnership return for the general partner and signed the Form 872-P for the Tax Matters Partner, i.e., Mid America Breeding Co., Inc.
5. Interestingly, Mid America Breeding Co., Inc. has not complained about the fact that the FPAA was addressed to a generic (unnamed) Tax Matters Partner of Holstein ET IV, Ltd., rather than to it or to a specific named individual such as its president, Goodman. Petitioner has never explained why he thinks he has standing to complain about this generic FPAA, since he received the notice to which he, as a limited partner, was entitled.↩
6. A partner is ineligible to serve as tax matters partner when he is a debtor in a bankruptcy proceeding. Sec. 301.6231(c)-7T(a), Temp. Proced. and Admin. Regs.; see Computer Programs Lambda, Ltd. v. Commissioner, 90 T.C. 1124↩ (1988). Petitioner alleged that Mid America Breeding Co., Inc., was bankrupt but did not provide any evidence to substantiate such allegation. Moreover, Goodman testified to the contrary.
7. Section 6223(d)(2)↩ provides that the Secretary shall mail an FPAA to each partner entitled to such notice not later than the 60th day after the day on which the FPAA was mailed to the tax matters partner.